
# OVED & OVED
### ATTORNEYS

February 14, 2025

**VIA ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

*[Handwritten annotations:]*
*1. The March 10 conference is VACATED.*
*2. Plaintiff shall respond to the February 14 pre-motion letter by March 10 with the information required by Individual Practices at 3A(iv).*
*3. The Court will hold the proposed briefing schedule in abeyance.*
*SO ORDERED*
*[Signature] USDJ 3-6-25*

Re: *C21K Co. Ltd. v. Gindi C21 IP LLC*, Case No. 1:24-cv-07734-PKC

Dear Judge Castel:

This law firm represents Defendant Gindi C21 IP LLC ("Defendant") in the above-referenced action. Pursuant to Rule 3.A of Your Honor's Individual Practices, we submit this pre-motion letter to inform the Court concerning Defendant's forthcoming motion to partially dismiss Plaintiff C21K Co. Ltd.'s ("Plaintiff") first amended complaint (ECF No. 12, the "Complaint" or "Cmpl") pursuant to Fed. R. Civ. P. 12(b)(6). A proposed briefing schedule for the motion is filed herewith. The parties are scheduled to appear for an initial conference on March 10, 2025.

As Defendant's motion will demonstrate, the Court should dismiss Plaintiff's claims for "tortious interference with contracts" (Count II) and "negligent interference with contracts" (Count III) because (a) they are barred by the applicable statute of limitations; (b) they are impermissibly duplicative of Plaintiff's breach of contract claim; (c) New York does not recognize a "negligent" interference with contract claim; and (d) and Plaintiff fails to plead the elements of a "tortious" interference with contract claim.

## BACKGROUND

Plaintiff commenced this action on October 11, 2024. According to the Complaint, on November 16, 2020, Plaintiff and Defendant entered into a license agreement, pursuant to which Defendant agreed to license the "Century 21 Marks" to Plaintiff and authorize Plaintiff to open and operate Century 21 department stores in South Korea ("Century 21 K Stores") (the "License Agreement"). Cmpl. ¶6-7, 11, 14-16. The License Agreement provides that, "this agreement and the rights and obligations of the parties hereunder" are governed by New York law.[1]

In support of its breach of contract claim, Plaintiff alleges that Defendant breached the License Agreement by terminating it and "at the very least, wrongfully failing and refusing to allow Plaintiff to open and operate the Century 21 stores in Korea." *Id.* ¶¶20-28, 33.

In support of its tortious interference claims, Plaintiff vaguely alleges that Plaintiff had valid contracts with several vendors for the purchase of inventory for the Century 21 K Stores (*id.* ¶36), and that after Defendant's termination of the License Agreement:

---

[1] Defendant's motion will provide a copy of the License Agreement, which is integral to the Complaint, and, therefore, should be considered on the motion to dismiss. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).

Hon. P. Kevin Castel
February 14, 2025
Page 2

> [Defendant] wrongfully interfered with [Plaintiff]'s contracts with vendors, including but not limited to...("Vendors") as, ***from May of 2021 through June/July 2021***, [Defendant] wrongfully warned the Vendors to cease doing business with [Plaintiff making it impossible for [Plaintiff] to complete its performance pursuant to the terms of the License Agreement."[2]

*Id.* ¶29. Plaintiff does not identify any specific agreements with these Vendors or their terms. Plaintiff also does not allege whether, and if so, how any of them actually breached those agreements. Rather, the Complaint merely alleges that "Defendant intentionally induced Vendors to breach their contracts with Plaintiff ***and/or*** to refuse to enter into future contracts with Plaintiff." *Id.* ¶¶38, 44. Plaintiff also conclusory alleges that "Defendant had full knowledge" of these contracts with the Vendors" (*id.* ¶37) and that Defendant's alleged interference was without justification (*id.* ¶¶39, 45). Yet, the Complaint contains no factual allegations to support these conclusions. To the contrary, given that Defendant's so-called interference came after it terminated the License Agreement, the Complaint actually supports the conclusion that Defendant was merely acting in its own self-interest of preventing the unauthorized use of its intellectual property and protecting its relationships with the Vendors. Finally, the Complaint does not even allege, much less demonstrate, that "but for" Defendant's conduct, the Vendors would not have breached the contracts.

## ARGUMENT

### A.   The Tortious Interference Claims Are Time-Barred

Under New York law, the three-year limitations period for tortious interference with contracts begins to run "'when the defendant performs the action [] that constitutes the alleged interference.'" *Corporate Trade, Inc. v. Golf Channel*, No. 12-cv-8811 (PKC), 2013 U.S. Dist. LEXIS 136781, *12, 14-15 (S.D.N.Y. Sept. 24, 2013) (J. Castel). Here, the Complaint alleges that Defendant's interference occurred "from May 2021 through June/July 2021." Accordingly, Plaintiff's claim accrued at the very latest in July 2021, requiring Plaintiff to file its tortious interference claims by July 2024. Because Plaintiff commenced this action in October 2024, Plaintiff's claims are time-barred. *Id.* at *12, 14 (dismissing tortious interference claims because the action was filed more than three years after the alleged interference).

### B.   The Tortious Interference Claims Are Duplicative of the Breach of Contract Claim

A tortious interference claim that is "'based on the same conduct as that which gave rise to the alleged contract breach'" must be dismissed as duplicative of the breach of contract claim. *Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*, 575 F. Supp. 3d 445, 471 (S.D.N.Y. 2021). Here, Plaintiff's tortious interference claims are based entirely on the allegations that, after Defendant terminated the License Agreement, Defendant "warned the Vendors to cease doing business with [Plaintiff] making it impossible for [Plaintiff] to complete its performance pursuant to the terms of the License Agreement." Under these circumstances, well-established precedent dictates that Plaintiff's tortious interference claims are impermissibly duplicative of its breach of contract claim. *See Honeywell Int'l Inc. v. Ecoer Inc.*, No. 24-cv-1464 (PAE), 2024 U.S. Dist. LEXIS 130177, *3, 6, 14 (S.D.N.Y. July 23, 2024) (licensee's tortious interference claim is duplicative, where licensee alleged that, after licensor terminated license agreement, licensor

---

[2] Unless otherwise noted, emphasis throughout this memorandum is supplied.

interfered with licensee's contracts with distributors by informing them of the termination).

### C. New York Does Not Recognize a Negligent Interference with Contract Claim

"New York recognizes a cause of action only for intentional - not negligent - interference with contract rights." *PAB Aviation, Inc. v. United States*, 169 Fed. Appx. 61, 63 n.2 (2d Cir. 2006). Accordingly, Plaintiff's negligent interference with contracts claim should also be dismissed for the simple reason that no such claim exists.

### D. Plaintiff's Fail to State a Claim for Tortious Interference with Contract

"Under New York law, [the elements of tortious interference with contracts are]: '(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification [including showing that "but for" defendant's conduct, third-party would not have breached]; (4) actual breach of the contract; and (5) damages.'" *Red Fort Capital, Inc. v. Guardhouse Productions LLC*, No. 19-cv-686 (PKC) (RWL), 2020 U.S. Dist. LEXIS 180394, *15 (S.D.N.Y. Sept. 30, 2020) (J. Castel). The Complaint fails to plead these elements.

First, the Complaint fails to allege the existence of "any specific contract or parties to the alleged contract[s]" with which Plaintiff could have interfered. *See id.* at *17. Instead, Plaintiff just baldly alleges that it "had valid contracts with several" of the Vendors **and/or** was anticipating of "enter[ing] into future contracts" with some of the Vendors for the purchase of inventory for the Century 21 K Stores. *See id.* (dismissing tortious interference because claimant "does not point to any particular contract with specific third-party").

Second, Plaintiff provides no facts demonstrating Defendant's "actual knowledge" of the allegedly breached contracts. *See Taboola, Inc. v. Ezoic Inc.*, No. 17-cv-9909 (PAE) (KNF), 2020 U.S. Dist. LEXIS 67934, *27, 29 (S.D.N.Y. Apr. 17, 2020) (dismissing tortious interference because plaintiff "failed to plead non-speculatively that [defendant was] informed" about "specific agreements" and "obligations").

Third, instead of alleging Defendant's "specific actions" needed to plead the intentional interference element, Plaintiff merely asserts that Defendant "warned" Vendors to "cease doing business with [Plaintiff]," without even specifying how, when, and to which Vendor these warnings were made. *Masefield AG v. Colonial Oil Indus.*, No. 05-cv-2231 (PKL), 2006 U.S. Dist. LEXIS 5792, at *12-13 (S.D.N.Y. Feb. 15, 2006) (allegations that defendants "put[] pressure on [third-party] to breach the contract" are "conclusory" and "lack any factual underpinnings"). Likewise, the Complaint is bereft of any allegations "that but for [D]efendant['s] actions [Vendors] would have continued [their] contract with [P]laintiff." *Burrowes v. Combs*, 25 A.D.3d 370, 373 (1st Dep't 2006). Further, given that Defendant's so-called interference came after it terminated the License Agreement, the Complaint supports the inference that Defendant acted to protect its own legal and business interests, thereby requiring Plaintiff to provide additional facts demonstrating "malice, fraud, or illegality." *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F. Supp. 3d 16, 31-32 (S.D.N.Y. 2017). Yet, Plaintiff does not even attempt to satisfy this additional requirement, which is yet another reason to dismiss this claim.

Finally, Plaintiff fails to allege that Vendors "actual[ly] breach[ed]" their contracts with Plaintiff. *Randa Corp. v. Mulberry Thai Silks, Inc.*, No. 00-cv-4061 (LAP), 2000 U.S. Dist. LEXIS

Case 1:24-cv-07734-PKC    Document 19    Filed 02/14/25    Page 4 of 4
Case 1:24-cv-07734-PKC    Document 21    Filed 03/06/25    Page 4 of 4
Hon. P. Kevin Castel
February 14, 2025
Page 4

17014, *2-3, 14-15 (S.D.N.Y. Nov. 22, 2000). Here, as demonstrated above, Plaintiff does not identify any specific agreements with the Vendors or allege whether, and if so, how any of them actually breached those agreements. Rather, the Complaint merely alleges that "Defendant intentionally induced Vendors to breach their contracts with Plaintiff *and/or* to refuse to enter into future contracts with Plaintiff," which leaves open whether or not any of the Vendors actually committed a breach or simply decided not to sell products to Plaintiff. *See id.*

We thank the Court for its attention to this matter.

*/s/ Andrew J. Urgenson*
Andrew J. Urgenson, Esq.

cc: All counsel of record (*via* ECF)