# OVED & OVED

### ATTORNEYS

May 8, 2026

*[Handwritten margin note: In view of the discovery extension, the motion (ECF 47) is denied without prejudice. SO ORDERED [signature] USDJ 5-12-26]*

**VIA ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

#### Re: *C21K Company Limited v. Gindi C21 IP LLC*, Case No. 24-cv-7734 (PKC)

Dear Judge Castel:

Defendant writes to request a discovery conference on Defendant's proposed motion to compel ("Motion"). The Motion is necessary because Plaintiff suddenly abandoned the ESI Protocol Plaintiff itself proposed and, after producing fewer than 100 unique documents, unilaterally declared its production nearly complete. Meanwhile, Defendant has collected custodial documents and is prepared to run final search terms and produce once an ESI protocol and search-term process are in place. Defendant therefore seeks leave to move to compel Plaintiff to adhere to the ESI protocol that the parties were negotiating before Plaintiff abandoned it (**Ex. 1**), to be so-ordered by the Court following a good-faith meet and confer, and to produce documents in compliance with that protocol. The next conference is scheduled for June 9, 2026. Dkt. 44.

## BACKGROUND

This action arises from a failed cross-border licensing deal. In late 2020, the parties entered into a License Agreement in which Defendant licensed certain Century 21 trademarks to Plaintiff so that Plaintiff could open Century 21 department stores in Korea ("C21K Stores"). Second Am. Compl. ("SAC") (Dkt. 25) ¶ 16; Countercls. (Dkt. 27) ¶¶ 1, 3-4. Under the agreement, Plaintiff agreed to pay $4.16 million at execution and $19.84 million in guaranteed minimum royalties. Countercls. ¶ 4. Defendant alleges that Plaintiff procured the deal by representing that HLB Co. Ltd. ("HLB") would enter the License Agreement through Plaintiff, a newly formed affiliate, and that HLB and its executives had an immaculate reputation that would not detract from the Century 21 brand, while concealing that HLB was under a South Korean government investigation for falsifying clinical trial results. Countercls. ¶¶ 39-45, 48, 102-08. Defendant also alleges that Plaintiff breached the contract when it failed to pay approximately $8.7 million in purchase orders, failed to pay staff, and failed to provide proof of insurance. Countercls. ¶¶ 1, 4-10, 81-84. Defendant terminated the License Agreement, and Plaintiff now sues for breach of contract, alleging Defendant prevented it from opening and operating the C21K Stores and seeking at least $10.995 million. SAC ¶¶ 32-34. Defendant denies the claim and counterclaims for fraudulent concealment and breach of contract, seeking at least $19.84 million in royalties and/or fraud damages. Countercls. ¶¶ 1, 93-108.

This case is thus an eight-figure commercial dispute between commercially sophisticated parties, with claims and defenses that make relevant documents reflecting, among other matters, Plaintiff's vendor payments, insurance contracts, knowledge of HLB investigation, and whether Plaintiff made diligent efforts to open the C21K Stores. Defendant served document requests targeted at such information on February 27, 2026; Plaintiff served its Objections and Responses on April 6, 2026. **Ex. 2** (Plaintiff's Responses and Objections ("R&O")).

The parties then worked on an ESI protocol to govern document discovery. On April 13, 2026, Plaintiff sent a proposed ESI protocol to Defendant, who responded with proposed revisions on April 17, 2026. The next workday, though, Plaintiff performed an about-face, writing "[W]e are near completion of our review of our client's documents and are preparing to proceed with

Case 1:24-cv-07734-PKC    Document 47    Filed 05/08/26    Page 2 of 4

Hon. P. Kevin Castel
May 8, 2026
Page 2

production without the use of an ESI vendor. Given the scope and nature of the anticipated production, we do not believe a formal ESI protocol is required." **Ex. 3** (Apr. 21, 2026, email). Plaintiff later elaborated that it "is not utilizing a search term-driven collection methodology and therefore will not be proposing search terms for Defendant's use. Plaintiff has instead conducted a reasonable and proportionate collection and review based on its knowledge of its own systems, custodians and the issues in this case." **Ex. 3** (Apr. 23, 2026, email). Then, on April 28, 2026, Plaintiff made its purportedly nearly "complet[e]" production. **Ex. 3** (Apr. 28 & Apr. 21, 2026, emails).

Far from complete, Plaintiff's production amounts to fewer than 100 unique documents, consisting almost entirely of: (i) redundant copies of the License Agreement and drafts already known to Defendant (C21K000806-C21K000809; C21K001001-C21K001044; C21K001206-C21K001265; C21K001505-C21K001546); (ii) untranslated Korean-language bank transaction records (C21K000309-C21K000333); (iii) several wire confirmations, including payments to the Law Firm of Jeffrey S. Dweck and scattered remittances (C21K001554-C21K001557); and (iv) marketing, corporate-identity, and brand-guideline materials (C21K000160-C21K000170; C21K000545-C21K000557; C21K000562-C21K000572). Absent from the production are core categories of documents Defendant requested, such as (i) Plaintiff's internal communications and business records of the opening, management, and operation of C21K Stores; (ii) accounting and financial records bearing on Plaintiff's ability to perform; (iii) vendor, purchasing-agent, employee, contractor, payroll, tax, insurance, and operating-expense records; (iv) documents concerning Plaintiff's pleaded allegations that it paid all vendors and kept staff on payroll; and (v) documents supporting each category of Plaintiff's claimed damages.[1]

Also largely absent from Plaintiff's "nearly complete" production are internal emails, instant messages, text messages, or memoranda. Defendant asked for these documents, and Plaintiff represented they would be produced.[2] If one credits Plaintiff's allegations, the documents must exist. Plaintiff alleges that it leased three Korean premises, paid royalties and taxes, advanced suppliers, carried payroll, signed a $5 million investment contract, placed $8.7 million in purchase orders, incurred millions more in staffing and operating expenses, and had contracts with seven named vendors (SAC ¶¶ 17, 22-23, 29). But documents reflecting these activities cannot be found in Plaintiff's production.

The absence of an operative ESI protocol makes this situation untenable. Because there is no ESI protocol, Plaintiff's production lacks the document-level parent-child relationships, load files, and metadata fields contemplated by Defendant's proposed protocol, including "BEGBATES," "ENDBATES," "BEGATTACH," "ENDATTACH," "Custodian," and "NativeLink" fields, making it impracticable for Defendant to assess completeness, authenticity, or context. **Ex. 1** (Proposed ESI Protocol) § E.4(e), § E.5. Likewise, without the custodian and search-term procedure contemplated by the proposed protocol, Defendant has no practical means of probing if Plaintiff's production is complete. *See* **Ex. 1** § B, § E.2. This deficiency is particularly acute because Plaintiff's view of its discovery obligations is so narrow. For example, in response to RFP No. 4, which sought "All Documents concerning the allegations in the

---

[1] *See, e.g.,* **Ex. 2** at Response to Request for Production ("RFP") No. 27 (Plaintiff agreed, subject to objections, to produce responsive non-privileged documents concerning the opening, management, and operations of C21K Stores); Response to RFP No. 29 (same for documents concerning Plaintiff's ability to perform under the License Agreement, including bank and accounting records); Response to RFP No. 30 (same for documents concerning vendor and purchasing-agent agreements); Response to RFP No. 31 (same for documents concerning employee and contractor agreements); Response to RFP No. 33 (same for documents concerning the allegation that Plaintiff made payments to all vendors); Response to RFP No. 34 (same for documents concerning the allegation that C21K Stores's staff was on payroll); Response to RFP No. 38 (same for documents concerning the pleaded damages categories in SAC ¶ 17).

[2] For example, in Request No. 9, Defendant sought "All Documents and Communications concerning any agreements in connection with the opening, operation, and management of C21K Stores, including any drafts, internal communications, notes, logs, calendars, and memoranda," and Plaintiff responded that it would "produce responsive, non-privileged documents within its possession, custody, or control." **Ex. 2.**

Hon. P. Kevin Castel
May 8, 2026
Page 3

Counterclaims," Plaintiff objected that the request was "improper to the extent it seeks documents supporting Defendant's own Counterclaims, which are uniquely within Defendant's possession, custody, or control," and that "Plaintiff is not obligated to marshal or produce documents in support of Defendant's claims." **Ex. 2** (Pl.'s R&O to RFP No. 4). Plaintiff's apparent position that it need not produce documents supporting any but its own claims is dubious. That said, if Plaintiff contends that it has no non-duplicative documents bearing on the Counterclaims, then Defendant is entitled to test that claim through a compliant ESI production that preserves metadata, family relationships, load-file information, and search methodology. **Ex. 1** (Proposed ESI Protocol) § E.2, § E.4(e), § E.5, § E.6.

## ARGUMENT

As shown above, entry of an ESI protocol substantially in the form of Defendant's proposed protocol is necessary so that document discovery can fairly proceed. *See In re Actos Antitrust Litig.*, 340 F.R.D. 549, 551 (S.D.N.Y. 2022) (noting "the importance of negotiating a comprehensive ESI protocol before data production is undertaken."); *Loc. 3621 v. City of New York*, No. 18-cv-4476 (LJL) (JW), 2023 U.S. Dist. LEXIS 227867, at *24 (S.D.N.Y. Dec. 20, 2023) ("the benefits of an agreed-upon ESI protocol are obvious"). Without an operative protocol, Defendant has no realistic means to test Plaintiff's demonstrably insufficient production. But with such protocol, both sides would be subject to reciprocal production standards allowing them to test completeness, context, and authenticity.

Plaintiff is not entitled to substitute the standard discovery procedure that Plaintiff itself proposed with its self-certification that its production is somehow "complet[e]." It is basic that "[n]o party possess[es] the unilateral ability to dictate the scope of discovery …. Instead, … any information not exempted by privilege or court order may be discoverable to the extent that it 'may [be] use[d] to support its claims or defenses.'" *Xchange Telecom Corp. v. Sprint Spectrum L.P.*, No. 14-CV-54 (GLS/CFH), 2015 U.S. Dist. LEXIS 21655, at *7 (N.D.N.Y. Feb. 24, 2015) (quoting Fed. R. Civ. P. 26(a)(1)(A)) (further quotation and citation omitted). Entry of the proposed protocol, or one substantially in its form, would permit both parties to fairly access this necessary information; Plaintiff's self-certification approach makes this exchange impossible.

Lastly, entry of an ESI protocol substantially in the form proposed is proportionate to the needs of the case and would not be unduly burdensome. This is an eight-figure cross-border commercial dispute between sophisticated parties. Plaintiff is a special-purpose entity seeking millions of dollars in contract damages, not a *pro se* plaintiff proceeding *in forma pauperis* to vindicate the public interest. And in any case, Plaintiff has never articulated any specific burden that would result from entry of an ESI protocol; to the contrary, Plaintiff itself proposed the protocol from which Defendant's version derives. In like circumstances, courts in this District have not hesitated to order the entry of an ESI protocol. *Castillo v. Albert Einstein Coll. of Med. Inc.*, 2025 U.S. Dist. LEXIS 125633, at *6 (S.D.N.Y. June 30, 2025) (ordering party to enter ESI protocol over unsubstantiated burden objection).

For the reasons above, Defendant requests that the Court grant its request for a conference.

*s/ Aleksandra Lamontanaro, Esq.*
Aleksandra Lamontanaro, Esq.

cc: All counsel of record (*via* ECF)

Hon. P. Kevin Castel
May 8, 2026
Page 4

## CERTIFICATION UNDER FED. R. CIV. P. 37(A)(1)

Under Fed. R. Civ. P. 37(a)(1), Defendant certifies that counsel attempted in good faith to resolve this dispute without Court intervention.  Counsel exchanged written correspondence from April 21, 2026, to April 29, 2026, concerning Plaintiff's unilateral decision not to enter an ESI protocol.  The parties were unable to resolve the dispute.